DAYTON WRIGHT AIRPLANE CO., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 16915. Promulgated August 23, 1929.

*W. W. Spalding*, *Esq.*, for the petitioner.
*John D. Foley*, *Esq.*, and *L. W. Creason*, *Esq.*, for the respondent.

## OPINION.

MURDOCK: The principal issue in this case is that of affiliation and it turns entirely upon the proper interpretation of section 240 (a) of the Revenue Act of 1918. That section is, so far as pertinent hereto, as follows:

That corporations which are affiliated within the meaning of this section shall, under regulations to be prescribed by the Commissioner with the approval of the Secretary, make a consolidated return of net income and invested capital for the purposes of this title and Title III, and the taxes thereunder shall be computed and determined upon the basis of such return: *Provided*, That there shall be taken out of such consolidated net income and invested capital, the net income and invested capital of any such affiliated corporation organized after August 1, 1914, and not successor to a then existing business, 50 per centum or more of whose gross income consists of gains, profits, commissions, or other income, derived from a Government contract or contracts made between April 6, 1917, and November 11, 1918, both dates inclusive. In such case the corporation so taken out shall be separately assessed on the basis of its own invested capital and net income and the remainder of such affiliated group

shall be assessed on the basis of the remaining consolidated invested capital and net income.

The petitioner contends that while the proviso above quoted undoubtedly has the effect of separating, for tax purposes, Government war contractors from peace-time industries, it has no effect upon the affiliation of peace-time industries with each other or Government war contractors with each other, therefore, the petitioner and the Dayton Metal Products Co. both being Government war contractors and the one owning directly substantially all of the stock of the other, were affiliated within the meaning of section 240 and entitled to file a consolidated return of net income and invested capital. In support of its contention, the petitioner quotes as follows from *United States* v. *Wigglesworth*, 2 Story 369:

> In the first place, it is, as I conceive, a general rule in the interpretation of all statutes levying taxes or duties upon subjects or citizens, not to extend their provisions, by implication beyond the clear import of the language used, or to enlarge their operation so as to embrace matters, not specifically pointed out, although standing upon a close analogy. In every case, therefore, of doubt, such statutes are construed most strongly against the Government and in favor of the subjects or citizens, because burdens are not to be imposed, beyond what the statutes expressly and clearly import. Revenue statutes are in no just sense either remedial laws or laws founded upon any permanent public policy, and, therefore, are not to be liberally construed.

The petitioner also quotes from *Manville Jenckes Co.*, 4 B. T. A. 765, as follows (p. 791):

> The provision of the statute is a relief provision and, under the well known rules of statutory construction, if there is any doubt concerning its meaning, it must be liberally construed in favor of the taxpayer. Language may not be added or an interpretation made which deprives taxpayers of rights which the wording of the section construed in its ordinary meaning grants.

It will be noted that the two rules of statutory construction set forth in the above quotations are only to be applied in cases of doubt as to the meaning of a statute. *Hamilton* v. *Rathbone*, 175 U. S. 414. Where the language of a statute is clear and free from doubt, there is no reason to apply these rules of statutory construction. In our opinion, section 240 (a) very clearly provides that the net income and invested capital of any corporation organized after August 1, 1914, and not successor to a then existing business, 50 per cent or more of whose gross income consists of gains, profits, commissions, or other income, derived from a Government contract or contracts made between April 6, 1917, and November 11, 1918, both dates inclusive, shall be taken out of any consolidated net income and invested capital of which it might otherwise form a part, and in such case, the corporation so taken out shall be separately assessed on the basis of its own invested capital and net income. In the present case there are

two such corporations, the net income and invested capital of which must be taken out of what might otherwise be consolidated net income and invested capital, and each of these corporations so taken out must be separately assessed on the basis of its own invested capital and net income. The use of the words "any," "corporation," "separately," and "own" is most convincing of the intent which we have attributed to Congress in this connection. The petitioner would have us read the last sentence of the above quoted part of section 240 (a) as if a number of the nouns were used in the plural and the sentence were as follows:

In such case the corporations so taken out shall be separately assessed on the basis of *their* own invested capital and net income * * *.

In our opinion Congress did not intend that this sentence should be read in this way. The fact that section 240 (a) further provides that the remainder of such affiliated group shall be assessed on the basis of the remaining invested capital and net income is not inconsistent with the decision we have reached nor does it make the other language of the section, including the proviso, doubtful. In this case there happens to be no remainder. Congress could have provided that the corporations taken out of the consolidated group might, in a proper case, be assessed on the basis of their consolidated invested capital and net income, but so far as we can see it did not so provide and no rule of statutory construction would allow us to extend the provisions of the statute by implication beyond the clear import of the language used or to enlarge their operation so as to embrace matters not specifically pointed out, although standing upon a close analogy.

The report of the Committee on Finance, relating to the Revenue Bill of 1918, contained the following language relating to consolidated returns:

Provision has been made in section 240 for a consolidated return, in the case of affiliated corporations, for purposes both of income and profits taxes. A year's trial of the consolidated return under the existing law demonstrated the advisability of conferring upon the commissioner explicit authority to require such returns.

So far as its immediate effect is concerned consolidation increases the tax in some cases and reduces it in other cases, but its general and permanent effect is to prevent evasion which can not be successfully blocked in any other way. Among affiliated corporations it frequently happens that the accepted intercompany accounting assigns too much income or invested capital to company A and not enough to company B. This may make the total tax for the corporation too much or too little. If the former, the company hastens to change its accounting method; if the latter, there is every inducement to retain the old accounting procedure, which benefits the affiliated interests, even though such procedure was not originally adopted for the purpose of evading taxation. As a general rule, therefore, improper arrangements which increase the tax will be discontinued, while those which reduce the tax will be retained.

Moreover, a law which contains no requirement for consolidation puts an almost irresistible premium on a segregation or a separate incorporation of activities which would normally be carried as branches of one concern. Increasing evidence has come to light demonstrating that the possibilities of evading taxation in these and allied ways are becoming familiar to the taxpayers of the country. While the committee is convinced that the consolidated return tends to conserve, not to reduce, the revenue, the committee recommends its adoption not primarily because it operates to prevent evasion of taxes or because of its effect upon the revenue, but because the principle of taxing as a business unit what in reality is a business unit is sound and equitable and convenient both to the taxpayer and to the Government.

This report does not lead us to believe that section 240 (a) as interpreted by us is not exactly what Congress intended. We therefore have found as a fact that the petitioner and the Dayton Products Corporation were not entitled to file a consolidated return under section 240 (a) of the revenue Act of 1918.

Our findings of fact sufficiently dispose of the question of the value of the General Motors Corporation stock at the time received by the petitioner and also of the question of the credit of $569,514.53 paid on account of its 1919 tax liability. The fourth allegation of error need not be discussed, because it only arises in case we hold that the two companies were entitled to file a consolidated return.

*Judgment will be entered under Rule 50.*